IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **M. REZA SEDAGHAT-HERATI,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Civil Action Number |
| **THE BOARD OF TRUSTEES OF THE** ) | **5:08-cv-01304-UWC** |
| **UNIVERSITY OF ALABAMA, a public** ) | |
| **corporation; and DAVID B. WILLIAMS,** ) | |
| **in his official capacity as the President of** ) | |
| **the University of Alabama in Huntsville,** ) | |
| ) | |
| Defendants**.** ) | |

**MEMORANDUM OPINION ON
DEFENDANTS' MOTION TO DISMISS**

Defendants The Board of Trustees of the University of Alabama ("the Board") and David B. Williams have filed a Motion to Dismiss the amended complaint of , Plaintiff M. Reza Sedaghat-Herati. (Doc. 9), amended complaint. Plaintiff seeks a writ of mandamus requiring the Board and Dr. Williams, in his official capacity as the President of the University of Alabama in Huntsville ("UAH") to pay over to him certain royalty payments pursuant to the Board's Patent Policy of the Board and a Settlement Agreement in another action.

Based on the Eleventh Amendment immunity of the Board, the motion is due

to be granted.

## I. BACKGROUND[1]

While a faculty member at UAH, Plaintiff co-invented a new technology involving chemical compounds. This invention resulted in the issuance by the United States Patent & Trade Office ("Patent Office") of United States Patent No. 5,252,714 ("the '714 Patent") on November 12, 1993. The '714 was issued to UAH as assignee..

The Board has a Patent Policy which generally requires UAH employees to assign their inventions or discoveries to UAH. In consideration of his assignment to UAH, and pursuant to UAH's agreement, Plaintiff is entitled to a ten percent (10%) royalty on revenue from any patent obtained from his invention.

In June 1993, UAH entered into a licensing agreement with Shearwater Polymers, Inc., under which Shearwater was licensed to utilize and exploit the commercial applications of the technology behind the yet-to-be-issued '714 Patent. In exchange for the license, Shearwater was obligated to pay UAH seven percent (7%) of gross revenue from the sale of products related to the '714 Patent.

Shearwater subsequently entered into an agreement to permit Amgen, Inc. to

---

[1] On a motion to dismiss, the Plaintiff's factual allegations are assumed to be true. *Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1342 (11th Cir. 2008).

exploit the '714 Patent.  Amgen used the '714 Patent to improve its production of pharmaceuticals, including the popular drug Neulasta.

Shearwater was later purchased by Inhale Therapeutic Systems, Inc.  In 2003, Inhale changed its name to Nektar Therapeutics, Inc. ("Nektar"). Shearwater, as a wholly owned subsidiary of Nektar, changed its name to Nektar Therapeutics AL ("Nektar AL").

Nektar and Nektar AL paid royalties to UAH for the sale of Neulasta until 2005.  After the payments to UAH ceased, the Board, on behalf of UAH, filed a complaint in this Court against Nektar and Nektar AL ("*Nektar* action").[2]  The complaint alleged patent infringement, breach of license agreement, violation of the Alabama Trade Secrets Act, unjust enrichment, and sought declaratory judgment regarding its rights under the '714 Patent.

Pursuant to a Settlement Agreement between the parties,  the action was dismissed with prejudice on July 7, 2006.  The Settlement was incorporated by reference in the Order of Dismissal. By the terms of the Settlement Agreement, the court  "retain[ed] jurisdiction for the enforcement of the Settlement Agreement and Releases."

---

[2]*The Bd. Of Trustees of the University of Alabama, a public corporation, v. Nektar Therapeutics AL, Corporation, Nektar Therapeutics, Inc., and J. Milton Harris, an individual,* Civil Action Number 5:05-cv-1514-JEO (N.D.AL).

Under the Settlement Agreement, Nektar and Nektar AL agreed to pay UAH a sum in consideration of the Board's release of claims against Nektar and Nektar AL. The '714 Patent is the only patent mentioned in the Settlement Agreement it provides that. UAH is "solely responsible for any and all payments of any kind whatsoever owed by UAH to Dr. M. R. Sedeghat-Herati arising from or relating to the 714 Patent, the 1993 License Agreement, or the new license agreement described in [this agreement]." The Settlement Agreement also recites that nothing "in this agreement should be construed as a waiver of any immunity enjoyed by the University and its employees, agents and assignees."

The Board and President Williams have informed Plaintiff that he is not entitled to a ten percent royalty arising from its settlement with Nektar and Nektar AL.

## II. THE CONTROLLING LAW AND ANALYSIS

### A. Standard for a Rule 12(b)(6) Motion to Dismiss

On a Rule 12(b)(6) motion to dismiss, "all of the factual allegations in the complaint must be accepted and construed in the light most favorable to the plaintiff." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 529 F.3d 1027, 1037 (11th Cir. 2008). "A motion to dismiss does not test the merits of a case, but only requires that the plaintiff's factual allegations, when assumed to be true, must be enough to raise

a right to relief above the speculative level." *Id.* **(**internal quotation marks omitted).

## B. State Sovereign Immunity and Waiver

The Board and President Williams argue that they are immune from liability in this action, pursuant to the Eleventh Amendment of the United States Constitution. Plaintiff concedes that the Board and President Williams, as agents or instrumentalities of the State of Alabama, are ordinarily entitled to state sovereign immunity. But Plaintiff maintains that the Board and President Williams have waived their immunity.

The Eleventh Amendment bars unconsented suits against a State.[3] *Fed. Mar. Comm'n v. S.C. State Ports Autho.,* 535 U.S. 743, 766 (2002). Nonetheless, a state may waive its Eleventh Amendment immunity from suit in federal court. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga., et al.,* 535 U.S. 613, 618 (2002). Litigation conduct is one means by which a State can waive its immunity. *Id.* at 620-23; *Gunter v. Atl. Coast Line R.R. Co.,* 200 U.S. 273, 291-93 (1906).

A State's waiver of immunity through litigation conduct "rests upon the Eleventh Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or

---

[3]"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." *Lapides*, 535 U.S. at 620. Accordingly, courts focus on the litigation act to determine whether immunity would create unfairness or inconsistency and whether the state would gain a litigation advantage through selective claims of immunity. *Id.* at 618-623; *Vas-Cath, Inc. v. Curators of Univ. of Mo.*, 473 F.3d 1376, 1384 (Fed. Cir. 2007); *Tegic v. Bd. of Regents of the Univ. of Tex. Sys.,* 458 F.3d 1335, 1344 (Fed. Cir. 2006); *N.H. v. Ramsey*, 366 F.3d 1 16-17 (1st Cir. 2004); *Regents of the Univ. of N.M. v. Knight*, 321 F.3d 1111, 1125 (Fed. Cir. 2003).

For example, in *Lapides*, a University professor brought an action against a state university in State court. The state university removed the action to federal court; and, once removed, the state university then claimed immunity from suit. 535 U.S. at 616-17. The Supreme Court held that the removal waived immunity because it would be unfair and inconsistent for a State to first invoke federal jurisdiction and then subsequently deny federal jurisdiction through immunity. *Id.* at 619-22.

Also, in *Vas-Cath*, a state university initiated and won an interference proceeding before the PTO against a company's competing patent application. 473 F.3d at 1378-80. The interference proceeding was an adversary proceeding and a participant had a right to appeal the PTO's decision to a federal court. *Id.* at 1384. The company appealed the decision to a federal district court where the State

university claimed immunity. *Id.* The Court found that this was a waiver because principles of fairness and consistency would be violated if the State university could first win a decision and then upon appeal claim immunity. *Id.*

By contrast, in *Tegic*, a state university had filed suit in a federal district court in Texas charging numerous companies with patent infringement. 458 F.3d at 1337. Tegic, a Washington corporation not a defendant in the Texas action, sold and licensed software to most of the defendants in the Texas action. *Id.* After the state university had filed in Texas, Tegic filed a declaratory action in a federal district court in Washington, seeking a declaration that the state university's patent was invalid and that Tegic's software did not infringe the state university's patent. *Id.* at 1337-38. The Federal Circuit held that the state university had not waived immunity in the Washington federal court by initiating the action in the Texas federal court. *Id.* at 1344-45. There was no wavier because a) it was a new action, by a new party, in a new forum and b) the state university had not used its immunity adversely against Tegic and Tegic could intervene in the Texas federal court, which would allow Tegic to benefit from the waiver of immunity and avoid any inconsistency and unfairness in litigation. *Id.* at 1342, 1344.

Plaintiff argues that the Settlement Agreement's terms waive immunity to this action. Plaintiff also argues that there would be unfairness and inconsistency if the

Board and President Williams have immunity here because the University waived immunity in the *Nektar* action, it waived immunity to any future proceedings related to the Settlement, and the University refused to comply with its obligations to Plaintiff.

Here, unlike *Lapides* and *Vas-Cath*, this is a new action and Plaintiff was not a party in the allegedly related action, the *Nektar* action, which resulted in the Settlement.  In addition, the  Board unequivocally expressed its intent *not* waive immunity.

## Conclusion

The "states rights" doctrine (now euphemistically referred to as "federalism)," precludes a federal court from hearing this case,  notwithstanding what appears facially to be a meritorious complaint.

By separate order, Plaintiff's amended complaint will be dismissed.[4]

_____
U.W. Clemon
United States District Judge

---

[4] Because of the disposition of this action on immunity grounds, the Court does not reach the alternate grounds of the Defendants' Motion to Dismiss.